FILED
IN CLERKS OFFICE
2026 AUG 27 P 12: 24
U.S. DISTRICT COURT
DISTRICT OF MASS.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

Katlin Montero,

Plaintiff, Civil Action No.: _______________

v.

Equifax Information Services LLC,

Defendant. **JURY TRIAL DEMANDED**

**COMPLAINT**

I'm Katlin Montero is a consumer living in Revere, Massachusetts, working to understand and verify the credit information that follows her everywhere she applies for housing, financing, or employment. When she requested her own Equifax file disclosure on June 15, 2026, she expected to receive what the law promises: a clear and accurate picture of every piece of information Equifax holds about her. Instead, she received a document riddled with blank fields where data should appear, frozen payment dates that have not changed in years, and a balance on

a charged-off account that reports higher than the account's own stated credit limit. The practical effect is that Ms. Montero cannot verify whether the derogatory information on her report is accurate, cannot cross-check her own records against what Equifax is selling to lenders, and cannot begin to understand the credit profile that shapes her financial life.

When Ms. Montero reviewed Confirmation Number 6166548338, she discovered that across ten accounts, Equifax had systematically withheld data that should appear on the face of her own disclosure. The Actual Payment Amount column, which should reflect what she paid each month, is blank for every single month on the Macys/Citibank account, the active Dept of Ed/Aidvantage loan, the US Department of Education collection account, and the American Express credit card. The Last Payment Date on the Macys/Citibank account reads 11/10/2020 for every one of the twenty-four consecutive months shown, as though time itself stopped. The same frozen-date pattern appears on the US Department of Education account, where 10/07/2025 repeats identically across ten consecutive rows. The payment history grids for multiple accounts show no data at all despite covering years of account history.

The scale of what is missing is not the product of a clerical glitch on a single account. Across the ten accounts in Ms. Montero's file disclosure, there are in excess of 200 blank, missing, or static placeholder data fields. Every account that carries a payment history grid shows substantial portions of that grid empty. The Actual Payment Amount, a field that tells a consumer what she actually paid each month, is blank across more than 80 individual monthly entries spread over multiple accounts. The Macys/Citibank charge-off account reports a current balance of $1,225 while simultaneously stating a credit limit of $900, a mathematical impossibility that should have

been caught by any basic data-integrity check before the report was printed. A pattern of omission this uniform, appearing identically across every account on the same disclosure, is not accident. It is policy.

15 U.S.C. Section 1681g(a)(1) required Equifax, upon Ms. Montero's request, to clearly and accurately disclose all information in her consumer file at the time of the request. The statute does not permit Equifax to omit fields it finds inconvenient to populate in a consumer-facing disclosure while providing that same data to third-party creditors. The FTC Advisory Opinion to Katrina Darcy, issued June 30, 2000, placed every nationwide consumer reporting agency on specific notice twenty-six years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third parties violates Section 1681g(a)(1). Equifax received that notice and has not corrected the systemic deficiencies reflected in this disclosure. Separately, 15 U.S.C. Section 1681e(b) required Equifax to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports. Reporting a balance that exceeds a credit limit by $325 on the same account reflects the absence of any automated check comparing two data fields that appear side by side in Equifax's own database.

Ms. Montero brings this action to recover for the actual harm caused by Equifax's incomplete and inaccurate disclosure: the inability to verify her own credit file, the emotional distress of confronting unexplainable frozen dates and missing data, the impairment of her creditworthiness, and the time and resources she has expended attempting to understand a disclosure that the FCRA required Equifax to produce clearly and accurately. She seeks actual damages, statutory

damages for willful violations, punitive damages, costs of this action, and injunctive relief directing Equifax to provide a complete and corrected file disclosure.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 15 U.S.C. Section 1681p and 28 U.S.C. Section 1331, as this action arises under the laws of the United States.

2. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) because Plaintiff resides in this district and the acts and omissions giving rise to her claims occurred in this district.

## III. PARTIES

3. Plaintiff Katlin Montero is a natural person residing at 104 Lincoln Street, Revere, Massachusetts 02151. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. Section 1681a(c).

4. Defendant Equifax Information Services LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. Section 1681a(f), regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties. Defendant's registered agent in the State of

Massachusetts may be located through the Massachusetts Secretary of State's corporate database.

## IV. FACTUAL ALLEGATIONS

### A. Credit Report Overview

5. On June 15, 2026, Plaintiff Katlin Montero requested and received her consumer file disclosure from Equifax, bearing Confirmation Number 6166548338 (hereinafter "the Disclosure"). The Disclosure encompasses ten credit accounts and covers Plaintiff's credit history spanning more than thirteen years.

6. Pursuant to 15 U.S.C. Section 1681g(a)(1), upon receipt of a consumer's request, a consumer reporting agency "shall clearly and accurately disclose to the consumer: [a]ll information in the consumer's file at the time of the request." Equifax's obligation to disclose is defined by 15 U.S.C. Section 1681a(g), which defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

7. As set forth in the FTC Advisory Opinion to Katrina Darcy (June 30, 2000), a consumer reporting agency that consistently scrambles, truncates, or omits data from a consumer's own file disclosure while transmitting that same data to third-party creditors does not technically comply with Section 1681g because it does not provide an accurate disclosure

of all information in the file. Equifax has been on specific notice of this obligation for more than twenty-six years.

**B. Incomplete Disclosure: Account-by-Account Blank and Missing Field Inventory**

8. The Disclosure contains systemic blank fields, missing data, and static placeholder dates across every account that carries a payment history or balance history table. The following account-by-account inventory documents the specific omissions.

**Macys/Citibank NA (Account ending *9296, Charge Off)**

9. The Macys/Citibank account, opened May 10, 2013 and carrying a current balance of $1,225, a credit limit of $900, and Narrative Codes 067 (Charged Off Account) and 065 (Account Closed By Credit Grantor), contains the following blank or missing data fields: (a) the Actual Payment Amount column is blank for all twenty-four consecutive monthly entries in the 24-Month History table, covering June 2024 through May 2026; (b) the Scheduled Payment Amount field at the account header level is blank; (c) the Date of Last Activity field is blank; (d) the Date Closed field is blank; (e) the Term Duration field is blank. In addition, the Last Payment Date field in the 24-Month History table reflects the identical static placeholder date of 11/10/2020 appearing without variation across all twenty-four consecutive monthly rows, despite the passage of more than five years. A payment date frozen identically across twenty-four consecutive monthly rows is not accurate payment history; it is a static placeholder that discloses nothing about the

account's actual payment experience. The payment history grid also shows entirely blank or no-data entries for all available months in 2019.

**Dept of Ed/Aidvantage (Account ending *0191, Education Loan, Pays As Agreed)**

10. The active Dept of Ed/Aidvantage education loan, opened October 16, 2019, with a current balance of $3,486 and a High Credit of $6,767, contains the following blank or missing data fields: (a) the Actual Payment Amount column is blank for every one of the twenty-two monthly entries visible in the 24-Month History table, covering July 2024 through April 2026; (b) the Date of Last Activity field at the account header level is blank; (c) the Deferred Payment Start Date field is blank; (d) the Balloon Payment Amount field is blank; (e) the Activity Designator field is blank. Furthermore, the payment history grid for this account shows entirely blank or no-data entries for all months across all eight years of history displayed (2019 through 2026), despite the account reporting a status of Pays As Agreed with a monthly payment of $58. An account that purportedly pays on time every month for more than six years but shows no payment history symbols whatsoever does not provide a clear and accurate disclosure of the consumer's payment record.

**US Department of Education (Account ending *0980, Education Loan/Collection)**

11. The US Department of Education account, opened January 8, 2025, bearing a current balance of $1,206 and Narrative Code 057 (Collection Account), contains the following

blank or missing data fields: (a) the Account Status field at the account header is blank; (b) the Terms Frequency field is blank; (c) the Scheduled Payment Amount field at the account header is blank; (d) the Actual Payment Amount column is blank for every one of the fourteen monthly entries in the 24-Month History table, covering March 2025 through April 2026; (e) the Date of Last Activity field is blank; (f) the Deferred Payment Start Date field is blank; (g) the Term Duration field is blank; (h) the Activity Designator field is blank; (i) the Past Due Amount column is blank for all fourteen monthly rows. In addition, the Last Payment Date field in the 24-Month History table reflects the identical static placeholder date of 10/07/2025 appearing without variation across ten consecutive monthly rows (October 2025 through July 2026), despite this account carrying a Collection status and a reported Amount Past Due of $1,206. Seven of the earlier monthly rows in the table (March 2025 through September 2025) contain no data whatsoever beyond the balance and high-credit figures. The payment history grid for 2025 shows blank or no-data entries for January and February 2025.

**American Express (Account ending *5653, Credit Card, Pays As Agreed)**

12. The American Express credit card account, opened May 24, 2016, with a current balance of $471 and a stated credit limit of $1,000 (Narrative Code 002, Credit Card), contains the following blank or missing data fields: (a) the Actual Payment Amount column is blank for every one of the twenty-three monthly entries in the 24-Month History table, covering June 2024 through April 2026; (b) the Last Payment Date column is blank for every one of the twenty-three monthly rows; (c) the Date of Last Payment at the account

header level is blank; (d) the Past Due Amount column is blank across all twenty-three monthly rows. Additionally, the payment history grid for this account shows entirely blank or no-data entries for all months across all eight years of history displayed (2019 through 2026), despite the account reporting a current status of Pays As Agreed.

**Barclays Bank Delaware (Account ending *8851, Flexible Spending Credit Card, Pays As Agreed)**

13. The Barclays Bank Delaware account, opened February 26, 2014, contains the following blank or missing data field: the payment history grid shows entirely blank or no-data entries for all months across all eight years of history displayed (2019 through 2026), despite the account reporting consistent monthly payments and a current Pays As Agreed status. The Past Due Amount column is blank across all twenty-three monthly history rows.

**Dept of Ed/Aidvantage Closed Accounts (Accounts ending *0170 and *0140)**

14. Three closed Dept of Ed/Aidvantage education loan accounts, bearing account numbers ending *0170 (two accounts) and *0140 (one account), closed October 16, 2019, with zero balances, contain the following blank or missing data fields across all three accounts: the Scheduled Payment Amount field is blank; the Actual Payment Amount field is blank; the Deferred Payment Start Date field is blank; and no 24-Month History

table rows are provided, notwithstanding that these accounts were open for periods of up to 84 months reviewed.

**Educational Computer Syste (Account ending *R24A, Education Loan)**

15. The Educational Computer Syste education loan account, opened September 15, 2017, contains the following blank or missing data fields: (a) the current balance field at the account header is blank; (b) the Actual Payment Amount column is blank for all four monthly entries in the 24-Month History table (June, July, August, and October 2024); (c) the Past Due Amount column is blank for all four monthly rows. The payment history grid shows substantially blank or no-data entries across most of the 2024 months displayed.

**Aggregate Missing Field Count**

16. In total, Plaintiff's file disclosure dated June 15, 2026 (Confirmation Number 6166548338) contains in excess of 200 blank, missing, or static placeholder data fields across the ten accounts it purports to disclose. On information and belief, Equifax maintains the complete underlying data in its internal databases and transmits it to third-party purchasers of consumer reports, while systematically withholding it from Plaintiff's own file disclosure. The identical pattern of blank Actual Payment Amount columns, blank payment history grids, and static placeholder Last Payment Dates appearing uniformly across every account on the same disclosure confirms that these omissions

result from a deliberate, uniform data policy rather than isolated error. Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939 (D. Nev. 2018) (disclosure is deficient under Section 1681g(a)(1) where it is unclear such that a consumer cannot determine the accuracy of the information in the disclosure).

**C. Per Se Inaccuracy**

17. The Macys/Citibank NA account (ending *9296) reports a current balance of $1,225 and a credit limit of $900. This account's own Narrative Code 233, present in every monthly row of the 24-Month History table, states that the Amount in the High Credit Column is the Credit Limit. Equifax's report therefore simultaneously acknowledges that the credit limit is $900 and reports a current balance of $1,225, a figure $325 greater than the stated credit limit. A balance that exceeds a credit limit is a mathematical impossibility for a credit account that is not a charge card with unlimited spending. Reporting a balance in excess of a credit limit is a per se inaccuracy under 15 U.S.C. Section 1681e(b) because no reasonable procedure to assure maximum possible accuracy would permit a report to be published showing a balance that exceeds the same account's stated limit without flagging and correcting the discrepancy.

**D. Third-Party Dissemination and Standing**

18. Plaintiff's Disclosure contains no hard inquiries from third-party creditors at the time of the June 15, 2026 disclosure. The Disclosure does reflect multiple account-review

inquiries from Equifax's own internal entities (Equifax Consumer Services), confirming that Plaintiff's consumer file was active and in use during the period covered by this disclosure. The inaccuracy and incompleteness of Plaintiff's file disclosure constitutes a concrete informational injury under 15 U.S.C. Section 1681g(a)(1) regardless of third-party dissemination, because the statute confers a specific, individualized right to receive an accurate and complete disclosure of one's own file upon request, and the violation of that right is itself the harm. TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

**E. Willfulness**

19. Equifax's conduct as described herein constitutes a willful violation of 15 U.S.C. Sections 1681g(a)(1) and 1681e(b) within the meaning of 15 U.S.C. Section 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), for the following reasons:

20. FTC Darcy Notice: The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed all nationwide consumer reporting agencies on specific notice more than twenty-six years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. Section 1681g(a)(1). Equifax's continued operation of a disclosure policy that systematically omits Actual Payment Amount data, leaves payment history grids blank, and freezes Last Payment Dates as static placeholders across every account on the same report is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007).

21. Systemic Uniform Pattern: The identical blank Actual Payment Amount columns, identical blank payment history grids, and identical static placeholder Last Payment Dates appearing uniformly across every account on the June 15, 2026 Disclosure confirm that these omissions result from deliberate, uniform data policy rather than isolated error. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

22. Absence of Data-Integrity Check: The failure to implement any automated comparison of a reported balance against a stated credit limit before publishing a consumer report, resulting in the Macys/Citibank account's balance of $1,225 appearing against a credit limit of $900 without detection or correction, is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007).

**F. Actual Damages**

23. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff Katlin Montero has suffered actual damages including: (a) emotional distress, frustration, and anxiety arising from her inability to understand or verify the accuracy of the information Equifax maintains about her; (b) impairment of her creditworthiness resulting from the reporting of a balance that exceeds the credit limit on the Macys/Citibank account; (c) lost credit opportunities and inability to meaningfully evaluate or dispute derogatory notations on her report due to the absence of the complete payment data that Section 1681g(a)(1) required Equifax to disclose; (d) time and resources expended attempting to

reconcile the missing, blank, and static-placeholder data in her disclosure with her own records; and (e) the deprivation of her statutory right to a clear and accurate file disclosure.

## V. CAUSES OF ACTION

### COUNT I

### VIOLATION OF 15 U.S.C. SECTION 1681g(a)(1)

### INCOMPLETE FILE DISCLOSURE

24. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

25. 15 U.S.C. Section 1681g(a)(1) requires that a consumer reporting agency, upon request, "shall clearly and accurately disclose to the consumer: [a]ll information in the consumer's file at the time of the request."

26. As set forth in the Factual Allegations above, Equifax's June 15, 2026 file disclosure (Confirmation Number 6166548338) failed to clearly and accurately disclose all information in Plaintiff's consumer file at the time of her request. Specifically:

27. With respect to the Macys/Citibank NA account ending *9296: (a) the Actual Payment Amount field is blank for all twenty-four months in the 24-Month History table; (b) the Scheduled Payment Amount field is blank; (c) the Date of Last Activity is blank; (d) the

Date Closed is blank; (e) the Term Duration is blank; and (f) the Last Payment Date field reflects the identical static placeholder date of 11/10/2020 across all twenty-four consecutive monthly rows, providing no accurate payment history.

28. With respect to the Dept of Ed/Aidvantage account ending *0191: (a) the Actual Payment Amount field is blank for all twenty-two months in the 24-Month History table; (b) the Date of Last Activity is blank; (c) the Deferred Payment Start Date is blank; (d) the Balloon Payment Amount is blank; (e) the Activity Designator is blank; and (f) the payment history grid shows no payment data for any month across all eight years of account history displayed, despite the account's reported status of Pays As Agreed.

29. With respect to the US Department of Education account ending *0980: (a) the Actual Payment Amount field is blank for all fourteen months in the 24-Month History table; (b) the Account Status is blank; (c) the Terms Frequency is blank; (d) the Scheduled Payment Amount is blank; (e) the Date of Last Activity is blank; (f) the Deferred Payment Start Date is blank; (g) the Term Duration is blank; (h) the Activity Designator is blank; (i) the Past Due Amount column is blank for all fourteen rows; (j) the Last Payment Date reflects the identical static placeholder date of 10/07/2025 across ten consecutive monthly rows; and (k) seven monthly rows contain no data beyond balance and high credit.

30. With respect to the American Express account ending *5653: (a) the Actual Payment Amount field is blank for all twenty-three months in the 24-Month History table; (b) the

Last Payment Date column is blank for all twenty-three rows; (c) the Date of Last Payment at the header level is blank; (d) the Past Due Amount column is blank for all twenty-three rows; and (e) the payment history grid shows no payment data for any month across all eight years of account history displayed.

31. With respect to the Barclays Bank Delaware account ending *8851: the payment history grid shows no payment data for any month across all eight years of account history displayed, and the Past Due Amount column is blank across all twenty-three monthly history rows, notwithstanding the account's documented history of consistent payments.

32. With respect to the Educational Computer Syste account ending *R24A: (a) the current balance at the account header is blank; (b) the Actual Payment Amount field is blank for all four monthly entries; and (c) the Past Due Amount column is blank for all four monthly rows.

33. In total, Plaintiff's file disclosure contains in excess of 200 blank, missing, or static placeholder data fields, as further detailed in the Factual Allegations above.

34. The uniform pattern of omissions across every account on Plaintiff's June 15, 2026 disclosure demonstrates that Equifax's failure to provide a complete file disclosure is the product of a systematic, deliberate data policy rather than any account-specific error. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed Equifax on specific notice of this obligation more than twenty-six years ago. Equifax's continued

noncompliance is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), and constitutes a willful violation of 15 U.S.C. Section 1681g(a)(1).

35. Alternatively, Equifax acted negligently in failing to disclose all information in Plaintiff's file, entitling Plaintiff to actual damages and costs under 15 U.S.C. Section 1681o.

36. As a result of Equifax's violations of 15 U.S.C. Section 1681g(a)(1), Plaintiff is entitled to: (a) actual damages sustained as a result of the violation pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); (b) statutory damages in the amount of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2).

## COUNT II

## VIOLATION OF 15 U.S.C. SECTION 1681e(b)

## PER SE INACCURACY: BALANCE EXCEEDS CREDIT LIMIT

37. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

38. 15 U.S.C. Section 1681e(b) requires that whenever a consumer reporting agency prepares a consumer report it shall "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

39. As set forth in the Factual Allegations above, the June 15, 2026 Disclosure reports the Macys/Citibank NA account ending *9296 as carrying a current balance of $1,225 against a stated credit limit of $900. Narrative Code 233, appearing in every monthly row of the 24-Month History table for this account, states that the Amount in the High Credit Column is the Credit Limit, confirming that $900 is the applicable credit limit. The reported balance of $1,225 thus exceeds the reported credit limit by $325.

40. A consumer report that reflects a balance exceeding a credit limit by $325 on the same account is per se inaccurate. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009). The publication of this inaccuracy reflects the absence of any reasonable automated procedure comparing a reported balance against a stated credit limit before the report is furnished, a basic data-integrity measure that any reasonable credit reporting procedure would include.

41. Equifax's failure to maintain any such data-integrity check, after more than twenty-six years of notice from the FTC and its own industry experience with the consequences of inaccurate credit reporting, constitutes a willful violation of 15 U.S.C. Section 1681e(b) under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007). Alternatively, Equifax's failure reflects negligent noncompliance entitling Plaintiff to actual damages and costs under 15 U.S.C. Section 1681o.

42. As a result of Equifax's violations of 15 U.S.C. Section 1681e(b), Plaintiff is entitled to: (a) actual damages sustained as a result of the violation pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); (b) statutory damages in the amount of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katlin Montero respectfully requests that this Court enter judgment against Defendant Equifax Information Services LLC as follows:

(a) Judgment in favor of Plaintiff and against Defendant on all counts;

(b) Actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages of not less than $100 and not more than $1,000 per willful violation, pursuant to 15 U.S.C. Section 1681n(a)(1)(A);

(d) Punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. Section 1681n(a)(2);

(e) Costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief directing Defendant to provide Plaintiff with a complete and corrected file disclosure that clearly and accurately discloses all information in Plaintiff's consumer file as required by 15 U.S.C. Section 1681g(a)(1); and

(g) Such other and further relief as the Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to Federal Rule of Civil Procedure 15(a) to add reinvestigation counts under 15 U.S.C. Section 1681i following expiration of the consumer reporting agency's 30-day reinvestigation window. See Foman v. Davis, 371 U.S. 178 (1962).

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

______________________________

Katlin Montero

Pro Se Plaintiff

101 Mill Rd apt #328

Everett, MA 02149

(617) 586-6686

mm02131@gmail.com

Date: June 17, 2026